IN THE UNITED STATED DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **BRYAN ARDOIN,** *Plaintiff* | § § § | |
| V. | § § | CIVIL ACTION NO. _____ |
| **CITY OF PORT LAVACA, TEXAS and INDIVIDUALLY, JUAN OBREGON and JOHN DOES 1-2.** *Defendants.* | § § § § § | **JURY TRIAL DEMANDED** |

**PLANITIFF'S ORIGINAL COMPLAINT**

NOW COMES BRYAN ARDOIN ("Plaintiff") and files this petition complaining of CITY OF PORT LAVACA, and individually, JUAN OBREGON, and JOHN DOES 1-2 (hereinafter collectively referred to as "Defendants"), and in support, respectfully shows the following:

**I.   PRELIMINARY STATEMENT**

1. The Public Intoxication arrest of Mr. Bryan Ardoin on August 27, 2018, stemmed directly from the malice, gross incompetence and deliberate indifference of the Defendants. In Texas, Public Intoxication is defined as follows:

> "A person commits an offense if the person appears in a public place while intoxicated ***to the degree that the person may endanger the person or another*** [*emphasis added*]."[1]

2. Despite such a clear standard, Mr. Ardoin was arrested for Public Intoxication by multiple Port Lavaca Police Officers although he was *sleeping peacefully* in his legally-parked vehicle. This arrest, *inter alia*, was a clear violation of Mr. Ardoin's right to remain free from unreasonable seizure, secured to him through the Fourth Amendment of the United States Constitution and a violation of 42 U.S.C. § 1983. Mr. Ardoin now seeks judicial redress for the harms he suffered.

---

[1] Sec. 49.02(a) of the Texas Penal Code.

1

## II.     PARTIES AND SERVICE

3.      Plaintiff BRYAN ARDOIN is an individual residing in Harris County, Texas.

4.      Defendant OFFICER JUAN OBREGON, sued in his individual capacity, at all relevant times acted under color of law, employed by Defendant City of Port Lavaca.

5.      Defendant(s) JOHN DOES 1-2, sued in their individual capacities, names not known yet by Plaintiff, at all times acted under color of law, employed by Defendant City of Port Lavaca Police Department.

6.      Defendant CITY OF PORT LAVACA, TEXAS is a municipal corporation, governmental entity and political subdivision of the State of Texas.

7.      City of Port Lavaca is a Governmental Agency, was and is and agency, department and/or subdivision of the Calhoun County, Texas organized and existing pursuant to the laws of the State of Texas, engaged in the hiring, training and supervision of law enforcement/corrections officers.

8.      One or more of the individual Defendants had supervisory responsibilities with respect to John and Jane Doe Defendants, and with respect to operations of the Port Lavaca Police Department.

9.      At all times material to the claims set forth herein, Colin Ragnow (hereinafter "Chief Ragnow") was the director of the Port Lavaca Police Department and was responsible for the oversight of the Port Lavaca Police Officers, the development, promulgation, and implementation of policies, procedures and standards for the Port Lavaca Police Department.  Specifically, Ragnow is the chief policymaker for the Port Lavaca Police Department and a final policymaker for the City of Port Lavaca and was directly responsible for the operations of the Port Lavaca Police Department and all of its officers, including those named herein.

10.     The Port Lavaca Police Department is responsible for, among other things, development, promulgation, and implementation of policies and procedures and standards for the Port Lavaca Police Department and more specifically policies, procedures and standards relating to the use of

force, arrest, conditions of confinement, internal affairs investigations, discipline and overall conduct of Port Lavaca Officers.

11. Defendant City of Port Lavaca funds and operates the Port Lavaca Police Department, which is responsible for the implementation of the sheriff's department's budget, policies, procedures, practices and customs, as well as the acts and omissions, challenged by this suit.

12. Defendant City of Port Lavaca is the employer of individual Defendants, Sheriff Ragnow and other unknown employees ("John and Jane Doe") defendants and is responsible for the acts and/or omissions of same that were performed in the course and scope of their employment.

### III.   JURISDICTION AND VENUE

13. Jurisdiction exists in this court pursuant to 28 U.S.C. §§ 1331 and 1343 as this action is brought under, inter alia, the Fourth Amendment of the United States Constitution and 42 U.S.C. § 1983, to redress the deprivation of rights, privileges and immunities guaranteed to Plaintiff. by constitutional and statutory provisions. Plaintiff further invokes the supplemental jurisdiction of this court pursuant to 28 U.S.C. § 1367 to adjudicate pendent claims arising under the laws of the State of Texas.

14. Venue is proper in this court because the causes of action occurred within the Southern District of Texas, Houston Division.

15. For violations of his federal constitutional rights, Plaintiff is entitled to the requested relief against all Defendants and their employees because at all relevant times herein, their conduct was subject to 42 U.S.C. §§ 1983, 1985, 1986 and 1988.

### IV.   FACTUAL ALLEGATIONS

16. Bryan Ardoin, a 42-year-old black male, who has never been arrested. Mr. Ardoin works in the City of Port Lavaca, but commutes from Houston, Texas. Mr. Ardoin works long shifts and sometimes sleeps in his car to avoid falling asleep on the road.

17.     On August 27, 2018, Bryan Ardoin was sitting in his car in an HEB Parking Lot–*asleep*– when he was disturbed by PLPD Officer Juan Obregon and two other PLPD Officers, John Does 1-2 (hereinafter collectively referred to as the "Officers" or "Defendant Officers".

18.     Mr. Ardoin's vehicle was shut off and the keys were not in the ignition.

19.     Mr. Ardoin had not committed any crime, nor was he engaging in suspicious or criminal activity–*he was sleeping*.

20.     Officer Obregon admitted that Mr. Ardoin was asleep when he approached him.

21.     The Officers woke Mr. Ardoin and ordered him out of his vehicle.

22.     Officer Obregon began interrogating Mr. Ardoin while John Does 1-2 began searching Mr. Ardoin's vehicle.

23.     Mr. Ardoin never consented to a search of his vehicle and verbally asked the Officers to stop searching after observing them invade his privacy, to no avail. However, they did stop to observe the intoxication investigation, but not in response to Mr. Ardoin's request.

24.     Obregon incessantly asked Plaintiff if he had been drinking, how much he had to drink and if he was under the influence of any other drugs. Mr. Ardoin denied being under the influence of any drugs–notifying the Officers that he does not drink alcohol or do drugs.

25.     The Officers forced Mr. Ardoin to undergo a Standard Field Sobriety Test ("SFST")–"*to see if he [Ardoin] could safely operate a motor vehicle.*" Mr. Ardoin initially objected to taking the SFST–claiming he did nothing wrong, but Officer Obregon threatened to arrest him if he didn't perform the test. Mr. Ardoin complied immediately thereafter.

26.     After taking the SFST, in order to prove his innocence and cease the Officers' desperate attempts to find signs of intoxication, Mr. Ardoin further offered his cooperation with their investigation—offering and requesting a breathalyzer or blood draw test be administered. Mr. Ardoin made repeated requests for a breathalyzer or blood draw test, all of which were denied.

27. Obregon then began lying–stating, "you were driving crazy when we pulled up." The other officers on scene, John Does 1-2, became annoyed because Plaintiff rejected their attempts to solicit a confession–suggesting that they should arrest Mr. Ardoin. The heavier-set John Doe Officer was yelling "*Yeah, that mother-fucker's drunk,*" "*make him do another test*" and "*let's just lock this little mother-fucker up.*" The heavier set Officer was very rude and disrespectful and kept calling or referring to Mr. Ardoin out of his name.

28. The manner in which John Does 1-2 were yelling commands to Officer Obregon, it seemed as if Obregon was a rookie or on the field training program.

29. Officer Obregon aggressively handcuffed and placed Mr. Ardoin in the back of the police car. The handcuffs were very tight on Mr. Ardoin's wrists.

30. The Officers then went back to searching Mr. Ardoin's vehicle–without his consent and over his verbal request that they stop–causing him to hit his head on the top of the patrol car. The Officers also removed and dropped Mr. Ardoin's handgun they found during their unconstitutional search of his vehicle–damaging it.

31. Mr. Ardoin made several requests for the Officers to loosen his handcuffs, but they ignored him as they searched his vehicle for nearly an hour.

32. Amid their search, and in response to Mr. Ardoin's incessant requests that his handcuffs be loosed, Officer Obregon removed Mr. Ardoin from the back of the vehicle, removed his handcuffs from Mr. Ardoin's wrists and placed them back on even tighter. When Officer Obregon placed Mr. Ardoin back into the patrol car, he intentionally caused Mr. Ardoin to hit his head on the top of the car and then laughed.

33. The Officers detained Mr. Ardoin for approximately 90 minutes–interrogating, berating and forcing him to undergo multiple Standard Field Sobriety Tests; and sit in the back of the patrol car–handcuffed–for a prolonged period of time.

34. While in the back of the car, Mr. Ardoin suffered an Asthma attack.

35. The Officers subsequently arrested Ardoin for Public Intoxication.

36. Knowing the charges to fraudulent, Mr. Ardoin took a toxicology examination immediately after he was released from jail. The results of which show that Mr. Ardoin did not have any drugs in his system.

37. On the way to the Jail, Mr. Ardoin asked Officer Obregon to loosen the handcuffs. Obregon stated that the handcuffs would be coming off shortly and continued driving.

38. Once they arrived at the Calhoun County Jail, Mr. Ardoin again asked Officer Obregon to loosen his handcuffs, a Calhoun Jail employee overheard the request and said "if you think his handcuffs are on tight, wait til you try mine on." The Calhoun Jail employee then removed Obregon's handcuffs and placed his handcuffs on Mr. Ardoin's wrists even tighter. Obregon and the Jail employees present laughed and made jokes directed at Mr. Ardoin.

39. Mr. Ardoin filed a complaint against the Officers, but the Port Lavaca Police Department failed to discipline its officers, finding that their conduct was in compliance with Texas laws and Department policies. Plaintiff now bring these claims against the Officers and the City of Port Lavaca for violations of *42 U.S.C. § 1983*, and Texas law.

## V.   CAUSES OF ACTION

### *FIRST CLAIM FOR RELIEF – 42 U.S.C. § 1983 VIOLATIONS*

40. Plaintiff re-alleges all of the allegations in the previous paragraphs, as though fully set forth herein.

41. *Section 1983.* The Civil Rights Act of 1871 (Ku Klux Klan Act), now codified as 42 U.S.C. § 1983 as federal law provides: "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for

redress." 42 U.S.C. § 1983.

42. The state action requirement for standing under 42 U.S.C. § 1983 has more commonly been referred to as "color of state law," from the statute itself. Plaintiff are informed and believes, and thereupon alleges that in committing said acts and/or omissions, each Defendant was the agent and employee of each other Defendant and was acting within such agency and employment and that each Defendant was acting under color of state law.

43. 42 U.S.C. § 1983 requires that the conduct complained of must have deprived the person of some privilege or immunity secured by the Constitution or laws of the United States. As such, Plaintiff alleges that Defendants, jointly and/or severally deprived them of their Fourth Amendment rights and those rights, privileges, and immunities secured by the Fourth and Fifth Amendments to the Constitution incorporated and applied to the states through the Fourteenth Amendment. Defendants violated this provision by the following actions, *inter alia,* and/or omissions:

> a) by using excessive force in the course of Defendant Officers' detention and arrest of Plaintiff, in violation of the Fourth Amendment and its "reasonableness" standard. Plaintiff therefore pleads that he was unlawfully man-handled and Officer Obregon caused him to strike his head on the car as he placed Plaintiff in the back seat. Said actions resulted directly and only from the use of force that was clearly excessive to the need, and the excessiveness of which was objectively unreasonable;
>
> b) by John Does 1-2 failing to intervene, where there was reasonable opportunity to intervene and such intervention would have prevented the violations and/or injuries of Plaintiff;
>
> c) by unlawfully searching Plaintiff's vehicle, removing and dropping his handgun on the pavement–damaging it; and
>
> d) by unlawfully towing the Plaintiff's legally parked vehicle; and
>
> e) by falsely and maliciously charging Plaintiff with the commission of a crime without probable cause to believe that such crime had occurred and on the sole basis of hatred, malice, frustration and/or anger.

44. The Fourth Amendment guarantees security from unreasonable search and seizure. It includes the expectation of privacy, the right to be free from arrests without probable cause to

believe the arrested person committed a crime. Accordingly, Plaintiff alleges that he was subjected to an unreasonable search and seizure, had his expectation of privacy violated, was detained without reasonable suspicion and/or probable cause, and subjected to physical abuse and unreasonable excessive force.

45. *§ 1983 - Excessive Force*. Plaintiff pleads that Defendants used excessive force in the course of Defendants' unlawful arrest, and/or investigatory stop, and/or other "seizure" of a free citizen, such as Plaintiff in violation of the Fourth Amendment and its "reasonableness" standard. Plaintiff therefore pleads that he was unlawfully assaulted and subjected to physical pain by Defendant Obregon. Said actions resulted directly and only from the use of force that was clearly excessive to the need, and the excessiveness of which was objectively unreasonable. Plaintiff asserts that in the act of Official Oppression, during an arrest unsupported by lawful authority, or force used without any legal justification, any amount of force is excessive.

46. Such actions and/or omissions are "objectively unreasonable" in light of the facts and circumstances confronting him without regard to his underlying intent or motivation. Clearly, careful attention to the facts and circumstances of this particular case demonstrates the unreasonableness of said actions. For these reasons, it is objectively unreasonable for Defendants to physically detain, arrest or strike a cooperative and non-combative Plaintiff's head against the car.

47. *§ 1983 - Search & Seizure*. Furthermore, when a person, such as Plaintiff is seized and is not a "suspect" and has committed no crime, but is forced to undergo police escalation and brutality of the situation, the importance of the governmental interests alleged to justify the intrusion is necessarily diminished. As such, the actions and/or omissions of said officers cannot be justified under the circumstances of the instant case.

48. Likewise, Defendants are liable if they conduct the search or seizure in an abusive manner even if they have the lawful authority to conduct the search and seizure. Plaintiff in this situation

are protected by the Fourth Amendment to the United States Constitution and Article I, Sec. 9 of the Texas Constitution. The right to security in person and property protected by the Fourth Amendment may be invaded in quite different ways by searches and seizures. A search comprises the individual interest in privacy; a seizure deprives the individual of dominion over his or her person or property. In this instance, the search and seizure of Plaintiff ran afoul of the Fourth Amendment because the search and seizure was conducted in an unnecessarily cruel, painful, and/or dangerous manner.

49. John Doe Defendants who were present on the scene unlawfully entered Plaintiff vehicle without his consent–and over his objection–arrested or allowed the arrest of Plaintiff and the events which led up to it go unchecked even though their duty was to uphold the laws of the State of Texas and the City of Port Lavaca.

50. Defendants violated Plaintiff's right to be protected from unreasonable search and seizures under the Fourth Amendment to the United States Constitution when they towed his vehicle, although it was legally parked on private property.

51. Defendant Officers had no conceivable legal authority or justification for towing Plaintiff's vehicle.

52. No reasonable, prudent or marginally competent law enforcement officer would have towed Plaintiff's operable and legally-parked vehicle, or believed they had the authority to do so.

53. Thus, the Defendant Officers' towing of Plaintiff's vehicle was manifestly indefensible, plainly incompetent and in violation of clearly established law.

54. John and Jane Doe Defendants who did not personally use excessive force, falsely arrest, or tow Plaintiff's vehicle, were present during the unfolding of the events that led up to the civil rights violations Plaintiff was subjected to, had the opportunity to intervene to prevent or stop them, but failed to do so.

55. *§1983 - False Arrest and/or False Imprisonment*. Plaintiff further alleges that Defendants,

jointly and/or severally have violated their Fourth Amendment rights when they were unreasonably falsely arrested and detained.

56. Plaintiff plead a § 1983 claim for false arrest under the Fourth Amendment as Defendants arrested them without probable cause. Defendants did not have probable cause to arrest them because the facts and circumstances within their knowledge was not reasonably sufficient to warrant a prudent officer to believe that he had committed or was committing an offense. On an objective basis, it is obvious that no reasonably competent officer would have concluded that a person sleeping in their vehicle on a private parking lot was driving under the influence or publicly intoxicated (i.e. a danger to himself or others). Evidenced by the City Attorney's immediate dismissal of the charges against Mr. Ardoin.

57. There was no evidence that Mr. Ardoin was intoxicated–or a danger to himself or others.

58. It is well-established that warrantless arrests must be supported by probable cause.

59. The Defendants' conduct not only violated Plaintiff's Fourth Amendment Rights to remain free from unreasonable seizure without due process of law, but their actions also violated Texas Penal Code 39.03 – Official Oppression. Further showing that Defendants violated clearly established law.

60. Alternatively, Defendants were deliberately indifferent to the federally protected rights of Plaintiff. In either event, it is clear that their actions were either plainly incompetent, reckless or knowingly in violation of clearly established law.

61. Defendant Obregon, in a sworn affidavit stated that Plaintiff was asleep in his vehicle and there were no keys in the ignition. Certainly, a citizen sleeping in his vehicle is not committing the crime of Public Intoxication.

62. *§ 1983 - Malicious Prosecution*. Plaintiff also pleads a cause of action for malicious prosecution under § 1983. Defendants, acting under color of state authority, maliciously charged Plaintiff with a misdemeanor and tendered false information concerning said charge to the

prosecutor which leads that person to believe that probable cause exists when there is none. Additionally, Plaintiff can demonstrate that the prosecution that is central to his civil lawsuit was terminated in his favor. Defendants not only caused the prosecution to be brought, but were prepared to testify, and submitted information in such regard, in aid of such prosecution. Said prosecution terminated in favor of Plaintiff. Defendants acted without probable cause and with malice and caused Plaintiff to expend funds in hiring an attorney and further caused them to suffer mental anguish damages. Chief Ragnow, even after notice of his Officers' unlawful actions, allowed for the continued prosecution of Mr. Ardoin.

63.     *§ 1983 - Municipal Liability*. It is also well-established that municipalities are liable under 42 U.S.C. § 1983 for constitutional torts that are in compliance with the municipality's customs, practices, policies or procedures. A municipality is liable for constitutional deprivations visited pursuant to governmental custom even though such custom has not received formal approval through the body's official decision-making channels. In this case, City of Port Lavaca and the PLPD are liable because its policymakers, including Chief Ragnow sanctioned, promoted and/or encouraged the custom, practice and/or policy or procedure of illegal searches, illegal seizures, excessive force and/or violating their citizens' right to be free of unwanted search and seizure that caused Plaintiff's complained-of deprivation(s). Individual Defendants' actions were a customary practice and/or policy or procedure that was sanctioned by the City of Port Lavaca out of which deprived Plaintiff of his civil rights by statute and by both the Texas and United States Constitutions. Liability for the City of Port Lavaca is established under §1983 because the assault and man-handling, search and arrest of citizens, with little or no justification, is a persistent, widespread practice of city employees -- namely officers -- that, although not authorized by officially adopted policy, is so common and well settled as to constitute a custom that fairly represents official municipal policy. City of Port Lavaca has actual or constructive knowledge of this practice, custom, and/or policy or procedure and sufficiently numerous prior incidents of

11

police officers beating citizens establishes custom and accession to that custom by the City's policy makers. Port Lavaca's unspoken policy of assaulting and unlawfully harassing and arresting citizens is a decision that reflects deliberate indifference to the risk that a violation of particular constitutional or statutory rights will follow the decision. In the alternative, Port Lavaca is liable under § 1983 for failure to adopt a policy precluding officers from unlawfully harassing, assaulting and arresting citizens because such failure to adopt such a policy is one of intentional choice.

64. Moreover, Port Lavaca is liable for inadequate training of police officers under §1983. Liability attaches to Port Lavaca because the City's failure to train amounts to deliberate indifference to the rights of the persons with whom the police come in contact. In particular, Plaintiff alleges that the training program in relation to the tasks a particular officer must perform is inadequate in the respect that the program fails to teach new police persons that, *inter alia*, reasonable suspicion is required for non-consensual detention and probable cause is required for arrest citizens, and that police action irreverent to these constitutional safeguards violates citizens' constitutional rights. As such, the deficiency in training actually caused Defendants to violate Plaintiff's constitutional rights.

65. By failing to provide proper training in the use of excessive force, Texas penal code and the Texas Code of Criminal Procedure, the PLPD, City Council and Chief Ragnow exhibited deliberate indifference in failing to train to an obvious need for training of which they were on notice in violation of 42 U.S.C. § 1983 and of her constitutional rights. With respect to the claims made the basis of this lawsuit, The City of Port Lavaca and the PLPD failed to adequately train its employees regarding the use of excessive force, Texas Penal Code and the Code of Criminal Procedure. This failure to train its employees in a relevant respect reflects a deliberate indifference to The City of Port Lavaca, the Port Lavaca City Council, PLPD and Chief Ragnow to the rights of the city's inhabitants and is actionable under 42 U.S.C. § 1983. Evidence of this policy, training deficiency and/or widespread practice is pronounced if Obregon or any of the officers present were

new or in-training.

66. Defendant City had the opportunity to review the unlawful conduct of Defendants, and upon review, determined that the Defendants acted in conformance to its official policies or otherwise ratified their conduct. Namely, the facts, even as alleged by Defendant Obregon, do not support the arrests for Public Intoxication, use of force against Plaintiff, warrantless entry of the Plaintiff's vehicle, or the towing of Plaintiff's legally parked vehicle. Thus, Defendants' conduct was manifestly indefensible.

67. Furthermore, as the decision to falsely arrest Plaintiff was made by multiple employees within the PLPD and/or was acquiesced to by other officers and supervisors, this case demonstrates that the Port Lavaca has a policy, practice, procedure or subculture which, not only allows, but fosters unconstitutional conduct, such as disregarding wholly, or manufacturing probable cause to incarcerate persons arbitrarily deemed deserving of incarceration.

68. Furthermore, as multiple PLPD Officers were involved these patently unconstitutional arrests, this case presents a self-contained study that Port Lavaca's employees are inadequately trained and supervised, or alternatively, that Port Lavaca's employees are so empowered by a pervasive and pandemic subculture of unlawful conduct, that the probable cause requirement for warrantless arrests is only optional. All of which was exacerbated by Port Lavaca's ratification of the Defendant Officers' unlawful conduct.

69. Violations of this nature can only occur as a result of institutional failures. Said failures show City's widespread practice of disregarding the rights of its citizens, and a failure to adequately train its employees on an institutional level.

70. *§ 1983 - Qualified Good Faith Immunity Not Available*. Qualified good faith immunity stands for the proposition that even though the civil rights of a complainant may have been violated, if the officer engaged in the conduct in good faith there is no liability for that individual. The standard by which an officer's entitlement to good faith qualified immunity is objective not

13

subjective. Defendants' actions judged by such objective standard protects, "all but the plainly incompetent or those who knowingly violate the law." The determination of objective reasonableness must be based on a version of the facts most favorable to Plaintiff. To the extent that credibility questions exist, a fact-finder continues to be necessary. In the instant case, Plaintiff alleges that Defendants are not entitled to claim "qualified good faith immunity."

71. Importantly, Defendants never had a good faith belief that they were engaging in lawful conduct because they acted in a manner demonstrating that they were intentionally and maliciously depriving Plaintiff of his federally-protected rights. In the alternative, the Defendants were plainly incompetent and unknowingly violated Plaintiff's civil rights. It is unclear which scenario is worse, but in either case, Defendants are not entitled to qualified immunity.

72. When the facts are taken in the light most favorable to the Plaintiff, it is clear that Plaintiff were merely checking on the condition of their relative when they was assaulted, harassed and/or arrested. Any reason given by Defendants for their unlawful actions and/or omissions does not warrant the application of qualified good faith immunity because they were never in danger nor were any other persons in the vicinity in danger of Plaintiff. Plaintiff have asserted a violation of their constitutional right to be free from unreasonable search and seizure and their right to privacy; this right was clearly established at the time of Defendants' actions. Moreover, Defendants' actions were objectively unreasonable in the sense that they knew or reasonably should have known that the actions taken within their authority or responsibility would violate Plaintiff's constitutional rights.

### *SECOND CLAIM FOR RELIEF - - Texas - - False Arrest and False Imprisonment*

73. Plaintiff re-alleges all of the allegations in the previous paragraphs, as though fully set forth herein.

74. As a pendent state cause of action, at all times material and relevant herein, the individual Defendants, by acts and/or omissions and under color of state law, willfully detained Plaintiff

without their consent and without authority of law. Plaintiff plead false imprisonment as Defendants had the intent to confine them, and carried out the intent by putting them in a position so that he could not move, let alone leave. Plaintiff were conscious during the confinement and said confinement resulted in harmful detention, without consent, and without authority of law.

### THIRD CLAIM FOR RELIEF - - Texas - - Intentional Infliction of Emotional Duress

75. Plaintiff re-alleges all of the allegations in the previous paragraphs, as though fully set forth herein.

76. As a pendent state cause of action, at all times material and relevant herein, the individual Defendants, by acts and/or omissions and under color of state law, intentionally and/or recklessly inflicted emotional duress upon Plaintiff, thereby they claim the tort of intentional infliction of emotional distress. Plaintiff alleges that the individual Defendants, acted intentionally and/or recklessly when beating him and further alleges that such conduct was extreme and outrageous. The actions of the individual Defendants caused Plaintiff to suffer emotional distress; and the emotional distress suffered by him was so severe that it required treatment -- no reasonable person should be expected to endure such mistreatment.

### FOURTH CLAIM FOR RELIEF - - Texas - - Assault & Battery

77. Plaintiff re-alleges all of the allegations in the previous paragraphs, as though fully set forth herein.

78. As a pendent state cause of action, at all times material and relevant herein, the individual Defendants, by acts and/or omissions and under color of state law did then and there by acts and/or omissions, intentionally, knowingly and/or recklessly caused severe personal injury to Plaintiff through physical contact with him.

79. Under Texas law, the cause of action for excessive force is simply one for assault and battery. Consequently, Plaintiff alleges that Defendant Obregon committed an assault upon him when they intentionally, knowingly, and/or recklessly forcibly grabbed him and physically forced

him to strike his head on the patrol car. At no time did Plaintiff consent to such contact. Said assaultive conduct of Defendant Obregon was committed intentionally, knowingly, and/or recklessly and was the proximate cause of bodily and emotional injuries to Plaintiff. Said injuries were the direct and immediate consequence of the individual Defendants' wrongful acts and a natural and direct result of the assault.

80.    At no time was Defendant Obregon privileged to use force against Mr. Ardoin, as the use of force was not necessary. Moreover, Obregon's assault and battery of Plaintiff was objectively unreasonable when balancing the amount of force used against the need for the force. Put differently, at no time was Plaintiff combative, resisting, fleeing or about to flee, nor was anyone (including Defendants) ever in danger, thus any legal purpose for using force was significantly diminished, if existent.

### *FIFTH CLAIM FOR RELIEF - - Texas - - Malicious Prosecution*

81.    Plaintiff re-alleges all of the allegations in the previous paragraphs, as though fully set forth herein.

82.    As a pendent state cause of action, at all times material and relevant herein, Defendants, by acts and/or omissions and under color of state law, instituted criminal proceedings against Plaintiff with malice and under color of state law. Hence, Plaintiff also pleads a cause of action for malicious prosecution under state law of Texas and said claim is set forth above.

### VI.    **DAMAGES**

83.    As a result of the foregoing unlawful and wrongful acts of Defendants, jointly and severally, Plaintiff has been caused to suffer general damages which include but are not limited to the following: both physical and emotional injury, including but not limited to - - pain and suffering, emotional and mental distress, and personal humiliation and shock.

84.    Said injuries have caused Plaintiff to incur special damages which include but are not limited to: past medical expenses, lost profits and the incurrence of attorneys' fees associated with

his criminal charges.

85.     Pursuant to the Civil Rights Attorney's Fees Award Act, 42 U.S.C. § 1988, a prevailing party in a § 1983 case is entitled to recover his attorney's fees. Hence, Plaintiff further pray for all costs and attorney fees associated with bringing the present case to trial.

86.     In addition, Plaintiff prays for punitive damages against all individual Defendants. Punitive damages are designed to punish and deter persons such as Defendants who have engaged in egregious wrongdoing. Punitive damages may be assessed under § 1983 when a Defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally-protected rights of others. While municipal defendants are absolutely immune from § 1983 awards of punitive damages, such damages may be awarded against a public employee or official in their individual capacity. Therefore, Plaintiff alleges and pray for punitive damages against all individual Defendants, as such Defendants actually knew that their conduct was unconstitutional, and/or was callously indifferent to its legality.

## VII.    **PRAYER FOR RELIEF**

87.     WHEREFORE PREMISES CONSIDERED, Plaintiff prays that upon trial of the merits, he recover compensatory damages against Defendants, jointly and severally; that Plaintiff also recover punitive damages against the individual Defendants in an amount to punish and/or deter and to make an example of those Defendants in order to prevent similar future conduct; and, that Plaintiff recover against each Defendant all reasonable and necessary attorney's fees, court costs and expenses in regards to the present suit in litigation. Moreover, Plaintiff prays for all pre-judgement and post judgement interest that can be assessed against the Defendants in the event of recovery; and that Plaintiff recover against each Defendant any and all other general or specific relief to which he proves themselves justly entitled.

                                                    Respectfully submitted,

                                                    **ANDRE EVANS & ASSOCIATES, PLLC**

*/s/ Andre D. Evans*
ANDRE D. EVANS
Federal Bar I.D. No. 2553080
Texas State Bar No. 24082970
3003 South Loop West, Suite 108
Houston, Texas 77054
T: (832) 941-1282
F: (832) 778-8353
andre@attorneyandreevans.com

**ATTORNEY FOR PLAINTIFF**